THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLOTTE RICHARDS, Defendant-Appellant.

(No. 74-103;

Fifth District—May 8, 1975.

Stephen P. Hurley, of State Appellate Defenders Office, of Mt. Vernon, and Marilyn Kueper, Research Assistant, for appellant.

Donald E. Irvin, State's Attorney, of Mt. Vernon, for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant-appellant, Charlotte Richards, was convicted of armed robbery after a jury trial in Jefferson County and sentenced to serve from 4 years to 4 years and a day. On appeal, she alleges that the court erred in denying her petition for discharge under the 120-day rule (Ill. Rev. Stat. 1973, ch. 38, par. 103—5) and that the jury was improperly instructed on the elements of the offense.

Defendant was incarcerated on May 9, 1973. A preliminary hearing was held on May 21 after which she was bound over to the grand jury. An indictment was returned June 27 and defendant was arraigned July 16, at which time she was presented with a copy of the indictment for the first time; she pleaded not guilty. On July 18, the State filed a motion to set the cause for trial. Defendant filed a motion to dismiss the indictment on July 27 and asked that an evidentiary hearing be held on the allegation that the grand jury proceedings were improperly conducted. On August 6, the State again asked that a trial date be set. The court set the cause for trial on August 27. On August 17, the State filed objections to defendant's motion to dismiss. On August 27, the cause was called for trial and both parties answered ready. Prospective jurors were present. The court noted that the motion to dismiss was still pending. Evidence on defendant's allegation was heard; the jury was dismissed; and the matter was taken under advisement by the court. On August 29, the State filed a third demand for trial. On August 30, defendant's motion to dismiss was denied. The cause was set for trial September 24. On

September 6, the State filed a motion for disclosure of alibi defense, a motion for disposition of all pretrial motions, and a disclosure to defendant of possible evidence in its possession. On September 7, the 121st day, defendant filed a petition for discharge. A hearing was set for September 12 on the petition for discharge and on September 11, the State filed objections. The record reflects no disposition of the motion. On September 24, the 138th day, the trial commenced.

The State's evidence showed that on the evening of May 3, 1973, defendant entered the home of Mr. and Mrs. James Stevens on the pretext of using the telephone. Once inside, she displayed a sawed-off weapon of some kind, ordered Mr. Stevens to cut the telephone wires and robbed him of $4. Both victims identified the defendant in open court. Mr. Stevens testified that he was certain that the weapon involved was a sawed-off double-barrel shotgun. He stated that he had experience with weapons in the service and had no doubt of the type of weapon used. Mrs. Stevens said that she thought the weapon was a shotgun but admitted that she had no experience with guns. During defense cross-examination of Jefferson County Sheriff Bill Hill, Hill admitted that during his investigation of the incident, he had been given a gun, a .22-caliber sawed-off rifle. The State had disclosed their possession of the weapon to the defendant on September 6, 1973. Over strenuous objection by the State, Hill was directed by the court to produce the weapon. Hill testified that he had received the weapon from one Gary Corder and that the weapon was in the same condition as when taken from Corder.

Gary Corder was the first witness for the defense. He identified the gun as one taken from his house by Darryl Allen. At the time the gun was taken, the bolt mechanism was missing and the trigger inoperable. The gun could not be fired. Corder stated that the weapon in the court room was in the same condition as it had been when Allen removed it from his house. The next defense witness was Charlotte Richards, the defendant. She stated that Defendant's Exhibit 1 was the weapon she had received from Darryl Allen and had used in the commission of the robbery and that it was in the same condition as it had been then. She admitted all the acts charged by the State.

The jury was instructed that the type of weapon used is a nonmaterial allegation which the State need not prove.

■■ Defendant first contends that she should have been discharged for the State's failure to bring her to trial within 120 days of her incarceration. Section 103—5 of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 103—5) provides in pertinent part:

> "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the

date he was taken into custody unless delay is occasioned by the defendant * * *."

"Delay occasioned by the defendant" has been construed to mean actual delay. Thus, if some motion was filed by the defendant within the 120 days which caused actual delay, the statutory period is tolled and the 120 days begins to run anew. (*People v. Nunnery*, 54 Ill.2d 372, 297 N.E. 2d 129 (1973).) In the instant case, defendant filed a motion to dismiss the indictment on the 79th day and asked that an evidentiary hearing be held. It is notable that the day the hearing was held was scheduled to be the date for the commencement of trial. We hold that the motion to dismiss the indictment caused a delay occasioned by the defendant. Defendant argues that she was not given a copy of the indictment until 19 days after indictment and that her motion to dismiss, filed 11 days later, was timely. We agree. But that does not relieve defendant of the burden of the delay. It is the nature of the motion that is crucial. That defendant might have been able to present and argue her motion earlier does not mitigate the fact that a delay was inevitable. Defendant also asserts that delays attributable to the State and the Court contributed to the passage of time. In the view we take of the case, however, defendant was tried within 120 days of the July 17 motion to dismiss the indictment. While this court has noted its disapproval of inaction by the State as well as the defendant on disposition of motions (*People v. Terry*, 24 Ill.App.3d 197, 321 N.E.2d 21 (1974)), we find no such problem here. The motion filed July 17 to dismiss the indictment caused some delay occasioned by the defendant, and she therefore was not entitled to discharge under section 103—5 on September 24 when trial was commenced.

Appellant's final contention is that, because of an erroneous instruction given, she was actually convicted of robbery and that the cause should be remanded for resentencing on that offense. It appears from the trial transcript that defendant's sole trial stratagem was that Defendant's Exhibit 1 was the "weapon" used in the robbery and that, because of its inoperative nature, it was not a "dangerous weapon." Counsel for defendant stated repeatedly in closing argument that defendant could clearly have been convicted of robbery, theft, or burglary, but that the State had failed to prove that defendant was "armed with a dangerous weapon," an essential element of armed robbery. The State tendered the following instruction, People's No. 11:

> "The People are not required to prove beyond a reasonable doubt any non-material allegations in the indictment. The type of weapon used is not a material allegation and need not be proved beyond a reasonable doubt."

Defendant, understandably, objected strenuously to the instruction. The trial judge stated that while he agreed with the instruction as a general statement of the law, he was disturbed with its application to the present case. He took the matter under advisement; the record contains no indication of the basis for his decision to allow the instruction to be given.

As noted above, the evidence presented to the jury was conflicting. Defendant's theory was that an obviously inoperable sawed-off .22-caliber rifle was used in the commission of the robbery and that the State therefore failed to prove an essential element of the offense. On the other hand, the State at no time admitted that the sawed-off rifle, Defendant's Exhibit 1, was the weapon used but contended that the evidence indicated that a sawed-off shotgun was used by the defendant. The jury had before it this conflicting evidence and was presented with two questions: Was defendant armed with a weapon and was it dangerous? We believe that the second question was removed from the jury by People's Instruction 11 and the State's closing argument.

We note first that the instruction given is not included in the Illinois Pattern Instructions. This fact is mentioned but not argued by the parties. Instead the argument centers on the question as to what is a dangerous weapon. Defendant quotes from *People v. Dwyer*, 324 Ill. 363, 155 N.E. 316 (1927), wherein the supreme court considered the claim that an indictment charging armed robbery with "a pistol" was insufficient in that it did not charge that the pistol was loaded. The court discussed the question of what constitutes a deadly weapon, noting that some weapons, "a gun, pistol, or dirk knife" are deadly per se while other weapons or items may or may not be dangerous depending upon how they are used. The court held that where no doubt of the character of the weapon used exists, the court is to determine whether it is deadly; if the dangerous character of an item depends upon its use by a defendant, the jury is to determine the question. The court further stated that a verdict of guilty is sufficient evidence that the jury determined that a weapon was dangerous. The principle was later reaffirmed in *People v. Trice*, 127 Ill.App.2d 310, 262 N.E.2d 276 (1970). The weapon involved there was a starter pistol unable by its construction to fire live rounds. The court held, however, that under the facts of the case, the use of the weapon (placed against the victim's head) made it dangerous because of the possibility of flash wounds. Neither *Dwyer* nor *Trice* involved the problem before this court. No cases have been cited by the parties nor have any cases been found which involve an instruction similar to People's Instruction 11. The law is well settled, however, that an instruction which removes from the jury the consideration of an element of the offense is erroneous. (*People v. Murawski*, 394 Ill. 236, 68 N.E.2d 272

(1946).) In the instant case, an I.P.I. instruction was given charging the jury that they must find beyond a reasonable doubt, *inter alia,* that defendant was armed with a dangerous weapon and that in the event the jury should not so find, the defendant must be acquitted. People's Instruction 11, given subsequent to the instruction just mentioned, did not reaffirm that the weapon must be found to be dangerous, but only that the "type of weapon" was immaterial. Three times during closing argument, the State told the jury that the court would instruct them that the type of weapon was immaterial. The obvious purpose was to negate defendant's only attempt at acquittal. The implication was that the jury need not be concerned in any way with the weapon. The jury could have decided that the inoperable sawed-off rifle, Defendant's Exhibit 1, was not the weapon used, but they could hardly have found that it was a gun, and therefore a dangerous weapon, considering its patently inoperative nature and the manner of its use. The effect of People's Instruction 11 and the State's argument, however, removed that question from the jury; this was error. The Illinois Pattern Instructions completely and properly inform the jury of the elements of armed robbery. We can perceive no situation where an instruction similar to People's Instruction 11 would be appropriate. Defendant has the unquestionable right to have her guilt or innocence determined by a jury fully cognizant of the facts and properly instructed in the law. Where instructions mislead or confuse the jury, that end is not accomplished.

The judgment of the Circuit Court of Jefferson County is reversed and the cause remanded for a new trial.

Reversed and remanded.

EBERSPACHER and G. MORAN, JJ., concur.